Ellis A. Hummel and Pauline J. Hummel v. Commissioner.
Hummel v. Commissioner
Docket No. 76311.
United States Tax Court
T.C. Memo 1961-34; 1961 Tax Ct. Memo LEXIS 314; 20 T.C.M. (CCH) 170; T.C.M. (RIA) 61034; February 17, 1961
*314 W. Byron Sorrell, Esq., 1100 New Hampshire Ave., N.W., Washington, D.C., for the petitioners. George J. Rabil, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies of $3,838.38 and $7,455.60 in petitioners' income tax for the calendar years 1955 and 1956, respectively. The deficiencies arose as a result of respondent's determination that credits to reserve accounts totaling $14,546.22 during 1955 and $16,054.83 during 1956 constituted taxable income to petitioners. The amounts in dispute, as set forth in the notice of deficiency, consisted of accounts in several financial institutions in 1955 and a single institution, The Philadelphia National Bank, in 1956. Petitioners now concede that the accounts in the other institutions as well as the accounts designated "holdback" reserves in The Philadelphia National Bank were income taxable to them in the taxable years 1955 and 1956. The only issue presented for our determination here is whether entries in the accounts labeled "participating reserves" in The Philadelphia National Bank in the amounts of $6,172.15 for 1955 and $13,397.43 for 1956 constituted taxable income *315 in those years, respectively. Findings of Fact The parties have stipulated some of the facts. We find those facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. Petitioners are husband and wife. During the years involved they resided at Halifax, Pennsylvania, and filed their joint Federal income tax returns with the district director of internal revenue at Philadelphia, Pennsylvania. Petitioners kept their books and filed their tax returns on a calendar year accrual basis. The principal source of petitioners' income during the years involved was the sale of mobile homes or trailers. This business was operated under the name of Ellis Hummel Trailer Sales. Petitioners sold trailers under an agreement called the Pennsylvania Mobile Home Installment Sale Contract, hereinafter called the contract, in which the petitioners were designated as the seller and their customer was designated as the buyer. The contract required the buyer to pay the "Time Balance" in specified monthly installments at any office of The Philadelphia National Bank, hereinafter referred to as the bank. The "Time Balance" included the unpaid cash-price *316 balance, insurance costs, certain itemized other costs, and the finance charge. Under the terms of the contract the seller retained title to and a security interest in the trailer. The contract further provided that the buyer should have the right to prepay at any time all or part of the unpaid "Time Balance" and to obtain as a result of the prepayment a rebate of the unearned finance charge. The contract authorized the entry of a confessed judgment against the buyer at any time the latter was in default. The contract contained an assignment clause which provided for the petitioners' assignment of the contract to the bank either with or without recourse. Petitioners signed an agreement with The Philadelphia National Bank on January 27, 1955, pursuant to which petitioners sold notes and installment sales contracts to the bank. The bank was obligated, as a result of this agreement, to set up for petitioners' account a reserve equal to an agreed percentage of the principal amount financed. The agreement provides in part as follows: As to Instruments in respect to which the Time Balance has been computed on a basis mutually agreed upon between us, you agree to set up, for the account *317 of Seller, out of the Finance Charge set forth in the Instruments a reserve equal to: 1% per year of the principal amount financed. On the 31st day of Jan. and the 31st day of July each year you will pay Seller out of the balance, if any, of such reserve such amount thereof as exceeds Five Thousand Dollars ($5,000) or 10% of the aggregate amount then outstanding on all Instruments acquired from Seller and then held by you, whichever is the greater, provided that you shall not be obligated to make any such payments to Seller, so long as Seller is indebted to you or is in default in performance of any of Seller's obligations to you. In the event of refund of a portion of the Finance Charge by reason of anticipation in payment by purchaser, the pro-rata portion of such refund shall be charged to said reserve. At the time of purchase of Instruments you will pay (a) for Seller's account the amount of any incidental costs financed, including insurance, and (b) to Seller the percentage agreed upon of the Unpaid Cash Price Balance. The difference between said percentage and 100% of said amount will be added to, and made a part of, the reserve described above and treated as therein provided. *318 The bank's ledger contained two separate reserve accounts under the firm name of Ellis Hummel Trailer Sales. The first, or "holdback" reserves, represented a portion of the purchase price due the dea er which was withheld by the bank. The second, or "participating reserves," represented a portion of the finance charges ultimately and potentially payable to petitioners pursuant to the quoted contract. The bank accrued its own earnings through the use of the so-called "12/78's method." [1]
*319 It is stipulated that the amounts of $6,172.15 and $13,397.43 were entered on a ledger and designated "participating reserves" by The Philadelphia National Bank under the names of petitioners for the taxable years 1955 and 1956, respectively. An examination of the bank's ledger disclosed the following: Volume
Holdback
Participating
Outstanding
Reserves
Reserves
Balance
Balance
Balance
Date
0
0
0
(January 31, 1955)
$ 62,256.61
$2,290.00
$ 1,706.22
July 25, 1955
195,780.16
5,729.37
6,172.15
December 30, 1955
206,516.01
6,309.59
6,913.84
January 30, 1956
374,363.34
8,386.77
13,647.23
July 31, 1956
500,848.19
8,386.77
19,569.58
December 31, 1956
The ledger reveals that occasional debits were made to the "participating reserves" account in amounts less than $200, and these debits were always matched with a corresponding reduction in the "volume outstanding" balance of several thousand dollars. The "holdback" reserves account was debited only once in the amount of $1,366.72, and there was no corresponding reduction in the "volume outstanding" balance or in the "participating reserves." Certain other debit entries were made on the *320 ledger during the period involved as corrections of bookkeeping errors. The record is silent as to why no further entries were made in the "holdback" reserves after June 22, 1956. During the years 1955 and 1956 the credit balance in the "participating reserves" never exceeded 10 percent of the "volume outstanding" balance of contracts purchased for petitioners. Petitioners did not report as income during the years 1955 and 1956 any of the amounts credited to the "participating reserves" account in the bank. In determining the deficiencies for the years 1955 and 1956 the respondent increased petitioners' income for the taxable year 1955 by the sum of $6,172.15 and for the taxable year 1956 by the sum of $13,397.43. Opinion KERN, Judge: This case involves the taxability to petitioners in 1955 and 1956 of the respective amounts of $6,172.15 and $13,397.43 which were stipulated to have been entered in a ledger and designated "participating reserves" by the bank under the names of petitioners in those years pursuant to the contract set forth in our Findings of Fact. It is our opinion that these amounts are taxable to petitioners under the authority of ; *321 ; ; ; and , affd. . Contrary to petitioners' contentions, we are unable to see how the method used to compute the accrued income of the bank can have any effect taxwise vis-a-vis petitioners on the entries in the bank's ledger made pursuant to its contractual obligation to set up a reserve for petitioners' account equal to 1 percent of the principal amount financed. Nowhere in the contract is there any indication that the reserve established for petitioners' account is in any way dependent upon the accrual of the bank's share of the finance charges. There are no facts in the record which would justify such a finding. Petitioners have failed to establish the connection they insist exists between the "12/78's" accrual method and the entries in the "participating reserves" on the bank's ledger. Decision will be entered for the respondent. Footnotes
1. This method is explained by petitioners' witness (an employee of the bank) as "the sum of the digits methods [sic] of accrual." It is described by that witness' testimony as follows: A Well, the 12/78's computes earnings out of the unearned discount on the basis that the amount outstanding, the dollar amount outstanding, bears to the matured payments. Let me rephrase that. The 12/78's - I want to make sure of this - stipulates the earnings on the same basis as the amount of money outstanding for each month, as it reduces. In other words, the first month the total amount is outstanding. We earn on the total and the next month that balance is reduced by payments. We earn on the reduced amount and so on. We relate that to the earning of the interest in the same manner the total of the principal reduces.↩